UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL H. BRENT,

        Plaintiff,

                                          Case number 11-10724

v.                                  Honorable Julian Abele Cook, Jr.

WAYNE COUNTY DEPARTMENT OF HUMAN
SERVICES, et al.,

        Defendants.

ORDER

In this civil rights action, the *pro se* Plaintiff, Nathaniel H. Brent, relying upon 42 U.S.C.

§ 1983, has challenged the constitutionality of certain provisions of the child protection laws of

the State of Michigan. In his eight-count complaint, Brent has pointed to several alleged violations

of federal and state law by those persons and entities whom he has identified as the Defendants in

this action.[1]

Currently pending before the Court are a request by Brent for leave to amend his complaint

and five dispositive motions by the following named Defendants; to wit, (1) the State Defendants;

---

[1]Brent has identified the following persons and entities as Defendants in this case: (1) the
State of Michigan and the Wayne County Departments of Human Services (collectively referred
to as "DHS"); (2) current and former employees of the Wayne County DHS Child Protection and
Foster Care Departments (Mia Wenk, Shevonne Trice, Heather DeCormier-McFarland, Monica
Sampson, Charlotte McGehee, and Joyce Lamar); (3) Noel Chinavare and Michael Chinavare
(temporary guardian appointees of Brent's male children); (4) agencies under contract with the
Wayne County DHS (Methodist Children's Home, Judson Center, and Children's Center of
Wayne County); (5) Wendolyn Greene (an employee of the Judson Center); (6) the Detroit
Police Department ("DPD"); (7) Officer Emina Biogradlija and unnamed John/Jane Doe
officers; and (8)Wayne County Family Court judges and referees (Judy Hartsfield, Leslie Smith,
Anthony Crutchfield, and Nicolas Bobak). The entities and individuals identified in categories
(1), (2), and (8) will be collectively referred to as the "State Defendants."

(2) Noel and Michael Chinavare; (3) the Methodist Children's Home; (4) the Judson Center and its employee, Wendolyn Greene; and (5) the Children's Center of Wayne County ("Children's Center").[2] On November 17, 2011, following a hearing that had been convened to hear the parties' arguments on these motions, the Court (1) granted in part and denied in part Brent's motion for leave to amend and (2) dismissed his claims against some of the Defendants. This order memorializes those rulings.

I.

Brent is the father of five minor children[3] - three boys, ALB, RAB, and JAB, and two girls, SAB and JAB. On January 17, 2010, RAB, then fifteen, left his home and arrived at a Detroit Police station barefoot and wearing only a pair of shorts. Detroit Police Officer Donald Coleman, subsequent to his interview with this young boy, transmitted a report to the Department of Human Services ("DHS") which described RAB's situation (i.e., a "run away" youngster from his home). RAB returned home that night.

Thereafter, the DHS processed this report by, among other things, (1) visiting the Brent's home in Detroit on January 20 and 21, (2) referring the Brent family to the Judson Center; and (3) filing a petition with the Family Division of the Third Judicial Circuit Court for Wayne County ("Family Court"), which sought authority for the removal of RAB and his siblings from their home. On February 16, Brent's name was placed on Michigan's Central Registry for "physical neglect."

---

[2]With the exception of the Detroit Police Department and its named and unnamed employees, these motions reflect the current positions of all of the Defendants in this case.

[3]For the purpose of protecting the identity and the security of the Brent minor children, and in keeping with Federal Rule of Civil Procedure 5.2(a), the Court adopts Brent's practice of referring to the minor children only by their initials.

On February 18, a preliminary hearing was held before Referee Bobak, and the court issued an order to take the children into protective custody. That evening, all five children were removed from the home by DPD officers and placed into emergency shelters. At a preliminary hearing the following day, guardians at litem and counsel were appointed for the parents. A a probable cause hearing was held on February 24, and probable cause was found to authorize the petition of removal.

On March 3, DHS employee Trice appointed temporary guardians for the children - the Chinavares for the boys and Wendy and Thomas Chinchak (not parties to this suit) for the girls. The children were all placed in the homes of their respective temporary guardians. Trice inspected the Brent home on March 10 and deemed it suitable for all of the children. A pretrial hearing was held on March 12 before Referee Crutchfield, and additional pretrial hearings were held on March 23 and 30 before Judge Hartsfield. On March 26, the children were all removed from the homes of the temporary guardians and returned to the emergency shelters. The male children were subsequently placed at Methodist on April 5, and the female children were placed in a foster home on April 28 under the supervision of the Children's Center.

A trial was conducted on May 11, 12, and 13, with the jury eventually finding that one or more statutory grounds existed for the Family Court to exercise jurisdiction over the Brent children. On June 2nd, the children were released to their parents but were ordered to remain under the supervision of the DHS. On June 21st, Brent filed an appeal of the Family Court's orders with the Michigan Court of Appeals, which remains without final resolution as of this date. Finally, on September 10th, after finding that (1) the conditions within the Brent home had improved, (2) the parents had been cooperative during this period, and (3) the children's needs were being met, the

3

Family Court terminated its supervision over the matter.

Brent, acting with the benefit of counsel, commenced this lawsuit on February 22, 2011. He set forth five separate counts pursuant to 42 U.S.C. § 1983: in four of his claims, Brent accuses the Defendants of interfering with his (1) parental rights, citing to the United States Constitutional amendments I, IV, and IV and the Michigan Constitution Article I, sections 2, 11, and 17; (2) due process rights, as guaranteed by the United States Constitutional amendment XIV; (3) right to be free from unreasonable search and seizure, relying upon United States Constitutional amendments IV and XIV and Michigan Constitution Article I, sections 11 and 22; and (4) right to keep and bear arms pursuant to United States Constitutional amendment II and the Michigan Constitution Article I, section 6.  Brent also cites to one federal statutory claim, in which he alleges that the Defendants violated the provisions of 18 U.S.C. § 1203 which became effective in January 1985 to prevent the taking of hostages. In addition, Brent has alleged three state-law claims; namely, (1) an intentional infliction of emotional distress; (2) the interference with familial integrity;[4] and (3) negligence.

## II.

The Federal Rules of Civil Procedure provide that, unless an amendment is filed under circumstances that are not applicable here, a party may amend a pleading only with the consent of the opposing party or the specific authority of the court. Fed. R. Civ. P. 15(a). This Rule is to be

---

[4]As noted by the Methodist Children's Home, Count VII, in which Brent has asserted a violation of his privilege to familial integrity, is in reality a right protected by the United States Constitution. Therefore, the Court will analyze this issue as a § 1983 claim. Brent has presented no argument to the contrary, and, in responding to the pending dispositive motions, he has relied exclusively on cases which analyze these claims as having been premised on the procedural and/or substantive due process guarantees of the United States Constitution. *See, e.g.*, *Troxel v. Granville*, 530 U.S. 57, 66 (2000) ("[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.").

construed liberally, and the court "should freely give leave when justice so requires." Fed. R. Civ.

P. 15(a)(2). The Supreme Court, speaking of the Federal Rules generally as well as of Rule 15 in

particular, has stated that it is "entirely contrary to the spirit of the Federal Rules of Civil Procedure

for decisions on the merits to be avoided on the basis of [ ] mere technicalities." *Foman v. Davis*,

371 U.S. 178, 181 (1962); *see also Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir.

1999) (citation omitted) ("[T]he thrust of Rule 15 is . . . that cases should be tried on their merits

rather than the technicalities of pleadings."). The underlying purpose of allowing parties to amend

their pleadings is to permit the issues to be tried on the merits. *Foman*, 371 U.S. at 182 ("If the

underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he

ought to be afforded an opportunity to test his claim on the merits.").

The Supreme Court has articulated several factors that are relevant to the propriety of

granting a request for leave to amend. "In the absence of any apparent or declared reason - such as

undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules

require, be 'freely given.'" *Foman*, 371 U.S. at 182; *see also Commercial Money Ctr., Inc. v. Ill.

Union Ins. Co.*, 508 F.3d 327, 346 (6th Cir. 2007) ("Factors that may affect that determination

include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party,

repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party,

and futility of the amendment.").

Here, there is no suggestion that Brent's request is the result of bad faith or a dilatory

motive. Indeed, his desire to expeditiously litigate this matter has been clear and consistent.

5

Moreover, inasmuch as this is his first request to amend his complaint, there has been no failure to cure deficiencies by amendments previously allowed. While such a course may, by necessity, delay an ultimate resolution of these issues and cause the Defendants to incur additional costs, this prejudice does not constitute an "undue prejudice" because it permits Brent's adversaries to know exactly what claims and allegations have been levied against them. Moreover, as will be discussed shortly, this prejudice will be minimized by a resolution of certain claims on the existing record.

In light of these factors, as well as Brent's *pro se* status and the policy expressed by Fed. R. Civ. P. 15(a)(2), the Court will grant - with some exceptions - his request to amend his complaint. However, an examination of the record by the Court reveals that there is no set of facts under which Brent can state a claim against some of the Defendants. Because an amendment of those claims would be futile, the Court will dispose of them on the basis of the existing record and deny any proposed amendment of his complaint with respect to them. The Court now turns to these issues.

### III.

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure,[5] a district court must accept the plaintiff's well-pleaded allegations as being true and

---

[5]The Children's Center and the Methodist Children's Center filed their dispositive motions after having proffered their answers to the complaint. Thus, their requests for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) are untimely. *See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) ("[A] post-answer Rule 12(b)(6) motion is untimely and . . . some other vehicle, such as a motion for judgment on the pleadings . . . must be used"). The Sixth Circuit Court of Appeals has treated post-answer Rule 12(b)(6) motions as requests for the entry of a judgment on the pleadings under Fed. R. Civ. P. 12(c). *See, e.g.*, *Satkowiak v. Bay Cnty. Sheriff's Dep't.*, 47 Fed. Appx. 376, 377 n.1 (6th Cir. 2002). Moreover, Fed. R. Civ. P. 12(h)(2) provides that a contention by the defense that an adversary has failed to state a claim upon which relief can be granted "may be raised . . . by a motion under Rule 12(c)." Thus, the Court will treat these Defendants' untimely requests for a dismissal as

construe each of them in a most favorable light. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to the plaintiff's conclusions of the law because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). It is imperative that the complaint "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

In order to survive an application for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the "plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In essence, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A Rule 12(c) motion should be granted only "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (citation and internal quotation marks omitted). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* at 581 (citation and internal quotation marks omitted). However, as with a 12(b)(6) motion, this assumption of truth does not extend to "true legal conclusions or unwarranted factual inferences." *Id.* at 581-82 (citation and internal quotation marks omitted).

---

motions for a judgment on the pleadings under Fed. R. Civ. P. 12(c).

When considering a 12(b)(6) or 12(c) motion, "documents attached to the pleadings become part of the pleading and may be considered." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted)); *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (applying *Amini*, 259 F.3d at 502, in the context of a Rule 12(c) motion (citation and internal quotation marks omitted)). Moreover, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Supplemental documents attached to the motion to dismiss do not convert the pleading into one for summary judgment where the documents do not "rebut, challenge, or contradict anything in the plaintiff's complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993) (citing *Watters v. Pelican Int'l, Inc.*, 706 F. Supp. 1452, 1457 n.1 (D. Colo. 1989)).

IV.

A.   *Rooker-Feldman*

The State Defendants and the Children's Center maintain that Brent has asked this Court to review and reject the judgments by the Family Court, and, in their collective opinions, his claims are precluded by the *Rooker-Feldman* doctrine. Under this doctrine, as articulated by the Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005), federal district

8

courts do not have jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." The reason for this rule is that appellate review of state-court judgments is vested in the Supreme Court, 28 U.S.C. § 1257, and it follows by "negative inference that . . . such review may not be had in the lower federal courts," *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008); *see also Exxon*, 544 U.S. at 283 ("[A]ppellate jurisdiction to reverse or modify a state-court judgment is lodged, initially by § 25 of the Judiciary Act of 1789, 1 Stat. 85, and now by 28 U.S.C. § 1257, exclusively in [the Supreme] Court. Federal district courts . .  are empowered to exercise original, not appellate, jurisdiction.").

The *Rooker-Feldman* doctrine is only implicated when a plaintiff complains of being injured by the challenged state court decision itself. *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006). This doctrine is not implicated simply because a party attempts to litigate an issue in a federal court that has already been litigated in a state court. When a "federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon*, 544 U.S. 293 (citations and internal quotation marks omitted). However, if "a plaintiff asserts before a federal district court that a state court judgment itself was unconstitutional or in violation of federal law," *McCormick*, 451 F.3d at 395, the *Rooker-Feldman* doctrine applies and the federal court lacks jurisdiction to hear the claim. In such cases, the proper course to be followed by the aggrieved party is to appeal through the state-court system and, if necessary, ultimately seek a review by the United States Supreme Court. 18 James Wm. Moore et al., Moore's Federal Practice § 133.30 (Matthew Bender 3d ed. 1997).

9

In *Pittman v. Cuyahoga County Department of Children and Family Services*, 241 F. App'x 285 (6th Cir. 2007), the plaintiff brought a § 1983 action against a county department of children and family services, alleging that it had (1) violated his Fourteenth Amendment due process and family relationship rights, and (2) acted wantonly, recklessly, and in bad faith during state-court custody proceedings. The Sixth Circuit concluded that his claims were not barred by *Rooker-Feldman* because he did not challenge the custodial order of the state court, but had, instead, challenged the defendants' refusal to recommend that he be given custody of his child. *Id.* at 288. The court noted that "the actual award of custody was not the prerogative of [d]efendants, but that of the juvenile court." *Id.*; *see also Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301 (6th Cir. 2009) (*Rooker-Feldman* did not apply where claims "do not seek review or reversal of the decision of the juvenile court to award temporary custody to the state, but instead focus on the conduct of [county agency employees] *that led up to* the juvenile court's decision to award temporary custody to the County").

The Sixth Circuit was presented with a similar - but distinguishable - situation in *Reguli v. Guffee*, 371 F. App'x 590 (6th Cir. 2010). There, the plaintiff sued the county and several individuals who had worked for the county, the juvenile court, various service programs, and a law enforcement agency. Addressing the activities of the juvenile court referee, the plaintiff alleged that she had unlawfully conspired with others to orchestrate the ex parte deprivation of her constitutional rights - but the actions that formed the basis of her allegations were the orders that the referee had issued or acts that stemmed directly from those orders. *Id.* at 595-96. The Sixth Circuit determined that these claims were based on injuries arising from the court orders themselves, failed to assert an "independent claim," and were thus precluded. *Id.* The court

10

"emphasize[d] that *Rooker-Feldman* will not always be applicable in suits against judicial officers, who are generally protected by judicial immunity," but found that, in these circumstances, the plaintiff's "allegations against [the referee] undoubtedly constitute an attempt to have a federal court review the constitutionality of the juvenile court decisions." *Id.* at 596 n.6. However, the claims against the other defendants which alleged "direct violations of [p]laintiffs' supposed constitutional rights, without the formal mechanisms of the court proceedings" - such as a claim that a youth services officer intentionally deceived the plaintiff's mother or that a county employee conducted an unlawful search and seizure - were not barred by *Rooker-Feldman* because they related to actions independent of the court proceedings. *Id.* at 597.

Brent contends that his claims against the State Defendants are not barred by *Rooker-Feldman* because, in his opinion, he has complained of injuries that were not caused by the final order of adjudication, but rather by the Defendants' "wrongful and unjustified violations of his Constitutional and Statutory rights." (Pl.'s Resp. to State Defs.' Mot. to Dismiss at 13). Furthermore, he asserts that the Defendants' *Rooker-Feldman* argument is without merit because the final order of the Family Court was a directive which called for the children's return - an order that he has not requested this Court to review or reject. However, an analysis of his complaint reveals that, as they relate to the Family Court judges and referees, each of his allegations would require the Court to review and reject those state-court judgments that were rendered throughout the course of the underlying proceedings.

With respect to the judicial Defendants, Brent's allegations are as follows:

<u>Referee Bobak</u>:
- Bobak presided at a preliminary hearing during which he refused to consider placing the children with their maternal grandparents, who were present in the

courtroom. (Compl. ¶¶ 80-81).

- He denied Brent his right of self-representation without cause or subject matter jurisdiction. (Compl. ¶¶ 83, 167).

- Bobak committed libel against Brent by claiming in a written order that Brent had "mental health issues," despite the fact that he is not a mental health professional and otherwise lacked information upon which to make such a statement. This defamation tainted all further proceedings and was the basis for other judicial decisions. (Compl. ¶¶ 84-86).

Referee Crutchfield:

- Crutchfield presided at a pretrial hearing on March 12, 2010, where he denied Brent's request for the return of his children, even though there were no allegations that their return home would have caused them any harm, contrary to the requirements of a Consent Order in a different case, *Dwayne B. v. Granholm*, Case No. 2:06-13548 (E.D. Mich.). (Compl. ¶¶ 95-97).

- His reason for not allowing the children to return was based upon the Brent parents' request for a trial by jury. In doing so, he was acting not in the capacity of a judicial officer, but as a private citizen and agent of DHS. (Compl. ¶¶ 98-99).

- After the children were returned home, but while DHS still retained jurisdiction, Crutchfield presided at review hearings on August 26 and September 10, 2010. Each time, he denied Brent's right to call witnesses, cross-examine witnesses, and offer evidence. (Compl. ¶¶ 144-145, 166-167).

- Brent filed a motion for review or rehearing. Judge Cavanaugh (not a party to this lawsuit) approved Crutchfield's recommendation to deny this motion.

Judge Smith:

- It is unknown if Judge Smith ever personally viewed the warrant authorizing removal of the Brent children or any other document bearing her stamped signature. (Compl. ¶ 72).

Judge Hartsfield:

- Judge Hartsfield presided at a pretrial hearing on March 23, 2010, where she denied Brent's request to represent himself, and instead appointed counsel to represent him. (Compl. ¶ 100, 167).

- At another pretrial hearing held before Hartsfield on March 30, she ordered, over the objections of the Brent parents and the children's appointed counsel, psychiatric evaluations of the male children due to "the conditions and environment that [the children] have been living under for God knows how

many years" and the parents' possible "mental health issues." The parents were not requested or ordered to undergo any mental health evaluations. (Compl. ¶¶ 113-116).

- Hartsfield did not have the authority to order these psychiatric evaluations because the court lacked official jurisdiction over the children. (Compl. ¶ 117).

- Another pretrial hearing was held on May 3, 2010, before Judge Hartsfield. The parents' guardians ad litem were dismissed, and the hearing was adjourned until May 10 "with the expectation that [the Brent parents] will be prepared to tender . . . a no contest plea to certain paragraphs in this petition." Hartsfield refused to address any parenting time requests "until after we get past the issue of trial," and acknowledged that the children would be returned home "if the [c]ourt receives a factual basis to support certain paragraphs in this petition." (Compl. ¶¶ 129-131).

- The adjourned hearing on May 10, at which all five children were present, ended when the Brent parents rejected the plea offer. (Compl. ¶¶ 132-133).

- Jury selection and trial began on May 11. DHS and the court refused to allow JAB (male) and SAB access to the court. Hartsfield ordered the photographs that were taken in the Brent home to be published to the jury, even though she had reason to know that they had been obtained in violation of Mich. Comp. Laws § 750.539d. Among other evidentiary rulings, she excluded as inadmissible hearsay Brent's testimony regarding his own actions and observations. (Compl. ¶¶ 134-137, 140, 166).

- On May 12, Hartsfield made an "off-the-record" order that JAB (female) not be permitted to attend the rest of the trial, despite her objections and contrary to Mich. Comp. Laws § 712A.12. (Compl. ¶ 138-139, 166).

- Per Hartsfield's order, the children returned to the Brent home on June 4, 2010, following the first dispositional hearing. However, no services were incorporated into the service plan to address any of the alleged reasons for the adjudication. (Compl. ¶¶ 141-142).

In various counts, Brent makes the following allegations against the "Judicial Defendants" or "Court Defendants" generally, without specifying which judge or referee to whom he has made reference:

Count II - Due Process:

- By restricting the Brent children's access to the court, they deprived the children of their due process right to participate in the hearings and denied Brent his due process right to call and question witnesses. (Compl. ¶ 166).

13

- They violated his due process right of choice of counsel by denying him of his right to represent himself. (Compl. ¶ 167).
- Their innate bias violated his due process right to an unbiased trial. (Compl. ¶ 168).

Count VI - Intentional Infliction of Emotional Distress:
- The conduct of the Judicial Defendants was extreme and outrageous, willfully and intentionally causing emotional distress. (Compl. ¶ 183).

Count VIII - Negligence:
- The Judicial Defendants, as officers of the court, had a duty of care to protect the rights of Brent and his children. In violating this duty, they were not acting within their scope of authority or with the reasonable belief that they were so acting, and acted with gross negligence and reckless disregard to the damages and deprivations of rights suffered. (Compl. ¶¶ 193-194).

It is clear to the Court that - as with the juvenile court referee in *Reguli* - all of these allegations related to injuries sustained as a result of the orders and determinations by the Judicial Defendants or their acts arising directly from those orders,[6] and are thus barred pursuant to the *Rooker-Feldman* doctrine. Inasmuch as Brent has "assert[ed] before [this] federal district court that a state court judgment itself was unconstitutional or in violation of federal law," *McCormick*, 451 F.3d at 395, the Court is without jurisdiction to hear his claims against the Judicial Defendants, all of which must be dismissed.[7]

Brent has submitted a supplemental brief in which he alleges to have uncovered a long-

---

[6]In his response to the State Defendants' motion to dismiss, Brent makes additional allegations against these Defendants relating to various perceived procedural improprieties. Even if these new allegations were included in an amended complaint, the disposition of the *Rooker-Feldman* issue by the Court would not be any different because these allegations all allege injuries arising from the Family Court orders and determinations.

[7]Because the Court lacks jurisdiction over Brent's claims against the Judicial Defendants, it will neither address nor attempt to resolve these Defendants' remaining arguments.

14

standing conspiracy between the Wayne County DHS and the Family Court to deny parents and

children of their due process rights and to commit fraud. His claim is based on testimony from

an unrelated case in which a Family Court employee testified as to certain court procedures,

including the stamping of Judge Smith's signature on various documents by probation officers.

On this basis, he argues that several court documents and orders (to wit, the petition of removal,

the warrant to remove the children, and the orders that were entered on February 22nd and 25th

of 2010) are fraudulent and "therefore removed any jurisdiction that could possibly be claimed

by the [F]amily [C]ourt." (Pl.'s Supp. Br. at 2). However, the presence or the absence of

jurisdiction - while relevant to questions of judicial immunity - is irrelevant to any *Rooker-*

*Feldman* analysis by the Court. *Reguli* addressed this issue, holding that "[e]ven if issued

without jurisdiction, the [challenged] order was still issued by a state court, and *Rooker-*

*Feldman* bars a federal court from reviewing the constitutionality of that order." 371 F. App'x

at 597. Thus, Brent's new argument does not affect the determination by this Court that the

claims against the Judicial Defendants are barred by *Rooker-Feldman*.[8]

     However, a different result obtains with regard to the remaining Defendants, as to whom

---

[8]During the motion hearing, Brent requested that these Defendants be dismissed without prejudice, indicating that the outcome of the pending state-court appeal would determine the applicability of the *Rooker-Feldman* doctrine. This, however, is an inaccurate statement of the doctrine. The orders about which Brent complains were rendered before the proceedings were commenced in this Court. Regardless of whether the state appellate court reverses or upholds those determinations, this Court lacks jurisdiction to consider them. Indeed, in *Reguli*, the Sixth Circuit found that *Rooker-Feldman* precluded district court review of the orders rendered by a juvenile court referee, notwithstanding that the plaintiff had filed an appeal of those orders three weeks before filing her federal complaint. Moreover, a dismissal for lack of subject-matter jurisdiction is not properly entered with or without prejudice: a dismissal without prejudice "misleadingly implied that the plaintiff may pursue the same claim again in federal court," while a dismissal with prejudice implies a decision on the merits. 18 Moore's Federal Practice § 133.30.

Brent levies allegations that are independent of the state-court judgments. The allegations regarding the DHS and its employees all pertain to (1) the investigations that they conducted; (2) the provision of false and misleading information to the Family Court;[9] and (3) various referrals, appointments, and other decisions they made and actions they undertook regarding the removal, placement, and care of the Brent children. With respect to the Children's Center, the Methodist Children's Home, the Judson Center including Wendolyn Greene, and the Chinavares, all of Brent's allegations relate to actions that were undertaken by them regarding the care and custody of, and services provided to, the Brent children. Because none of these claims assert an injury derived from the state-court judgments themselves, they are not barred by *Rooker-Feldman*.

## B.  Collateral Estoppel

The State Defendants and the Children's Center each argue that Brent's claims are barred by the doctrine of collateral estoppel. The Full Faith and Credit Act, 28 U.S.C. § 1783 obliges federal courts to give recognition to state-court judgments and to provide them with the same preclusive effect that the state would afford them. Thus, the Court looks to Michigan law to determine whether any or all of Brent's claims are precluded. Collateral estoppel bars the "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue reoccurs in the context of a different claim. *S.E.C. v. Quinlan*, 373 F. App'x 581, 584–85 (6th Cir. 2010) (quoting *Taylor v.*

---

[9]In *McCormick*, the Sixth Circuit held that, where the plaintiff asserted that particular "state court judgments were procured by certain [d]efendants through fraud, misrepresentation, or other improper means," the claims against those defendants were independent of the judgments themselves, and thus were not barred by *Rooker-Feldman*. 451 F.3d at 392.

16

*Sturgell*, 553 U.S. 880, 892 (2008)). A party who seeks to preclude the relitigation of an issue

under the doctrine of collateral estoppel must establish each of the following four elements:

> (1) [T]he precise issue raised in the present case must have been raised and actually
> litigated in the prior proceeding; (2) determination of the issue must have been
> necessary to the outcome of the prior proceeding; (3) the prior proceeding must
> have resulted in a final judgment on the merits; and (4) the party against whom
> estoppel is sought must have had a full and fair opportunity to litigate the issue in
> the prior proceeding.

*Schreiber v. Philips Display Components Co.*, 580 F.3d 355, 367 (6th Cir. 2009) (quoting

*Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th Cir. 2007)); *see also Monat v.*

*State Farm Ins. Co.*, 677 N.W.2d 843, 845-46, 850 (Mich. 2004) (describing these requirements

as three distinct elements, and noting that mutuality of estoppel is not required where doctrine is

asserted defensively).

The Court concludes that Brent's remaining claims are not collaterally estopped. Even

assuming that the precise issues raised here were raised and litigated in the Family Court,[10] "the

fact that [Brent] allege[s] that false information was provided as the basis for the state court's

determinations means that collateral estoppel does not apply." *Kolley v. Adult Protective Servs.*,

786 F. Supp. 2d 1277, 1291 (E.D. Mich. 2011) (noting that in *McCormick*, 451 F.3d at 398 & n.

12, the Sixth Circuit "implicitly acknowledged this principle outside of the false arrest

context"). If a plaintiff alleges that the state-court determinations were made on the basis of

misrepresentations and false testimony, it cannot be said that the previous litigation represented

a "full and fair opportunity" to litigate the issues implicated by those now-challenged facts. *Id.*

---

[10]The Court notes, however, that several of Brent's claims relate to matters that are
entirely independent of the state-court proceedings, especially with regard to those adversaries
other than the State Defendants.

Because the Defendants cannot establish the first element of collateral estoppel, this doctrine does not preclude any of Brent's claims.

C.      State Actor Requirement Under § 1983

Several of the Defendants (namely, the Chinavares, the Methodist Children's Center, the Judson Center, and Wendolyn Greene) argue that they should not be characterized as state actors for purposes of imposing liability under 42 U.S.C. § 1983. In order to establish a claim under 42 U.S.C. § 1983, a plaintiff must set forth those facts that - when construed in his favor - clearly establish "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) [that has been] caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). For purposes of a § 1983 claim, "[a] private party's actions constitute state action . . . where those actions may be 'fairly attributable to the state.'" (*Chapman v. Higbee*, 319 F.3d 825, 833 (6th Cir. 2003) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947 (1982)). The Sixth Circuit has recognized three tests to determine whether a private party may be considered to be a state actor: to wit, (1) the public function test; (2) the state compulsion test; and (3) the nexus test. *Id.*

Under the *public function* test, "a private party is deemed [to be] a state actor if he or she exercised powers traditionally reserved exclusively to the state." *Id.* This test has been narrowly interpreted, and has only been found for such functions as holding elections, exercising eminent domain, and operating a company-owned town. *Id.* (citations omitted). Under this test, "the [c]ourt conducts a historical analysis to determine whether the party has engaged in an action traditionally reserved to the state, and the plaintiff bears the burden of making that showing."

18

*Reguli*, 371 F. App'x at 600 (citation and internal quotation marks omitted).

The *state compulsion* test "requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (citations omitted). It is insufficient for an aggrieved party to assert that the state merely approved of or acquiesced in the private party's actions. *Id.* Rather, the plaintiff must "allege and prove that state officials coerced or participated" in the private party's decision-making. *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007).

Finally, under the *nexus* test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *S.H.A.R.K. v. Metro Parks Serving Summit Co.*, 499 F.3d 553, 565 (6th Cir. 2007). In order to meet this burden, an aggrieved plaintiff must "demonstrate[] that the state is intimately involved in the challenged private conduct." *Wolotsky*, 960 F.2d at 1335.

Brent submits that all of these Defendants should be deemed to be state actors under all of these three tests. However, the Court concludes that, even if permitted to amend his complaint, Brent cannot show that the Chinavares should be characterized as state actors under any of these tests. Because this "inquiry is fact-specific, and the presence of state action is determined on a case-by-case basis," *Chapman*, 319 F.3d at 834 (citation omitted), the Court will detail the factual allegations that Brent has made with respect to Michael and Noel Chinavare:

- Shevonne Trice, without authority to do so, appointed the Chinavares as

19

temporary guardians for the male Brent children on March 3, 2010. The three boys were placed in the Chinavares' home. (Compl. ¶¶ 88, 89, 92).

- Michael Chinavare signed documents authorizing evaluation and treatment of JAB as his "parent or legal guardian" without consulting or notifying the Brent parents. (Compl. ¶ 101).

- Noel Chinavare authorized and refused immunizations for JAB (male), including authorizing immunizations that were not recommended for years to come. She also requested unnecessary and non-routine testing to be conducted on JAB without notifying the Brent parents. (Compl. ¶ 102).

- On March 26, 2010, upon the Chinavares' request, the Brent children were removed from their home. (Compl. ¶¶ 103-104).

- The amended petition for removal included a new allegation that stated that Noel Chinavare took JAB (male) to his regular doctor for a checkup, at which time she was informed that JAB had been tested for lead in the past and the level was very high. (Compl. ¶ 122).

In expressing his opposition to the Chinavares' contention that they are not state actors, Brent has failed to address the three tests, as outlined above. Instead, he merely states that they are state actors because "none of the actions complained of . . . would have been possible absent state action. DHS placed the children in the Chinavares['] home, and DHS provided [them] with fraudulent documents giving [them] full parental authority over [his] children." (Pl.'s Resp. to Chinavares' Mot. to Dismiss at 7).

This allegation, in combination with the relevant paragraphs of the complaint, is plainly insufficient under any of the tests which have been outlined above. Brent does not allege - indeed, he cannot contend - that providing housing to children under a temporary guardianship arrangement is the exercise of an exclusive state function. *Cf. Reguli*, 371 F. App'x at 600 (providing court-ordered services to teenagers is not a power traditionally reserved exclusively to the state). Furthermore, he has neither alleged nor established that, notwithstanding that the Chinavares were providing a service to the state, it "control[led their] actions in such a manner

20

that [the state] is responsible for [their] conduct." *Id.* (plaintiff did not satisfy state compulsion test where he failed to produce evidence of relationship between defendant and state, the extent to which the state dictated what services must be provided, the percentage of defendant's organization's funding that was received from state, or any other factor that would demonstrate that state coerced or participated in his decision-making). Indeed, Brent alleges just the opposite - that the "Chinavares made specific choices regarding the educational and medical care of the children without any consent of the parents to do so." (Pl.'s Resp. to Chinavares' Mot. to Dismiss at 6). Finally, and for similar reasons, the allegations that the state placed the male Brent children in the Chinavares' home and provided them with a purportedly fraudulent document do not establish a sufficient nexus between the state and the Chinavares to deem them to be state actors. Indeed, Brent has failed to provide the Court with any evidence that the state was "intimately involved" in the actions taken and/or the decisions made by the Chinavares, as required under this test.

Because the Chinavares cannot be deemed to be state actors under any of the relevant tests, Brent's § 1983 claims against them fail to state a claim and are, therefore, dismissed. Moreover, Brent has indicated in his response to their dispositive motion that he did not intend to plead intentional infliction of emotional distress or negligence claims against them. Therefore, these claims are also dismissed. This decision disposes of all of Brent's claims against the Chinavares,[11] who are therefore dismissed as parties to this action.

With respect to the Judson Center, Wendolyn Greene, and the Methodist Children's

---

[11]As noted above, Brent's familial integrity claim arises under the federal constitution, and not Michigan law, and thus is construed as a § 1983 claim requiring state action.

21

Center, Brent has made a number of additional factual allegations in his response to their dispositive motions that were not included or even alluded to in his complaint. These Defendants submit that Brent's new allegations should be disregarded by the Court. However, in light of the fact that Brent has been granted leave to amend his complaint, the Court will withhold its judgment on the issue at this time.

V.

For the reasons that have been set forth above, the Court (1) grants in part the State Defendants' motion to dismiss (ECF No. 50), and Brent's claims against the Judicial Defendants (namely, Bobak, Crutchfield, Hartsfield, and Smith) are dismissed for lack of subject-matter jurisdiction, (2) grants the Chinavares' motion for summary judgment (ECF No. 69), and Brent's claims against them are dismissed for failure to state a claim, and (3) grants Brent's request for leave to amend his complaint in part, but denies it with respect to the claims against those Defendants who were just dismissed. As directed by the Court, Brent must file his amended complaint within a period of twenty (20) days of the November 17th hearing. If he fails to do so, the Court will assess his claims based only upon the allegations within his original complaint. The remaining Defendants will thereafter have a period of fourteen (14) days in which to (1) file revised dispositive motions that will address the merits, if any, of the amended complaint[12] or (2) file notice with the Court of their intent to rely upon their original

---

[12]The Court notes that this deadline does not represent the final deadline by which all parties must have filed all dispositive motions. This deadline will be contained in the scheduling order that will issue in this case should this matter not be resolved by the dispositive motions.

dispositive motions.[13] Brent may file his response briefs within fourteen (14) days of any new

filing, and replies may follow within seven (7) days thereafter. The Court will set a new hearing

date by separate order.

IT IS SO ORDERED.

Date: November 28, 2011                    s/Julian Abele Cook, Jr.

                                           JULIAN ABELE COOK, JR.

                                           U.S. District Court Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on November 28, 2011.

                                           s/ Kay Doaks

                                           Case Manager

---

[13]Because an amended complaint supersedes the original complaint and renders the latter a legal nullity, if Brent files an amended complaint, there will no longer be any unresolved disputes regarding the merits of the claims in the original complaint. *See, e.g.*, *B&H Med., LLC v. ABP Admin, Inc.*, 526 F.3d 257, 268 n.8 ("[Original] complaint is a nullity, because an amended complaint supercedes all prior complaints." (citations and internal quotation marks omitted)). Thus, upon filing of an amended complaint, the dispositive motions associated with the original complaint will be rendered moot. However, in the interests of efficiency, the Defendants, by their notice of intent to rely on the original motions, may effectively re-file those motions, but now in association with the amended complaint.

23