UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NATHANIEL H. BRENT,

        Plaintiff,

v.

WAYNE COUNTY DEPARTMENT OF HUMAN SERVICES, et al.,

        Defendants.

Case No. 11-10724
Honorable Julian Abele Cook, Jr.

## ORDER

In this civil rights action brought pursuant to 24 U.S.C. § 1983, the *pro se* Plaintiff, Nathaniel Brent, has alleged multiple violations of federal and state law by those individuals and entities who have been identified by him as Defendants.[1]

Now before the Court are the following motions: (1) Brent's motion for reconsideration of an order, dated February 4, 2013 (ECF No. 171); (2) the Children's Center's motion for

---

[1] Brent has identified the following persons and entities as the Defendants in this case: (1) the Wayne County Department of Human Services ("DHS"); (2) current and former employees of the Wayne County DHS Child Protection and Foster Care Departments (Mia Wenk, Shevonne Trice, Heather DeCormier-McFarland, Monica Sampson, Charlotte McGehee, and Joyce Lamar); (3) Children's Center of Wayne County (agency under contract with the Wayne County DHS); (4) the Detroit Police Department ("DPD"); (5) Officers Emina Biogradlija, Michael Bronson, and unnamed John/Jane Doe officers. The Court has previously dismissed Brent's claims as they relate to ten other Defendants (Michigan Department of Human Services; Methodist Children's Home;  Judson Center; Wendolyn Greene (an employee of the Judson Center); Noel Chinavare and Michael Chinavare (temporary guardian appointees of Brent's male children); and Wayne County Family Court judges and referees (Judy Hartsfield, Leslie Smith, Anthony Crutchfield, and Nicolas Bobak)). The entities and individuals identified in categories (1) and (2) will be collectively referred to as the "State Defendants."

reconsideration of an order, dated November 15, 2012 (ECF No. 163); (3) the Children's Center's motion for leave to file a reply brief in support of its motion for reconsideration; (4) Brent's motion to reinstate his Fourth and Fourteenth Amendment claims against the State Defendants; and (5) Robert Brent's motion to join as a plaintiff.

I.

This litigation arises out of a series of events between January 17, 2010 and September 10, 2010 when Brent's minor children were removed from his care and home, and ultimately returned to him. The factual history of this case was extensively laid out by the Court in its order of November 15, 2012. For the ease of the reader, this factual history is recounted here.

Brent is the father of five minor children - three boys (ALB, RAB, and JAB), and two girls, (SAB and JAB). On January 17, 2010, RAB, then fifteen, left his home and arrived at a Detroit Police station barefoot and wearing only a pair of shorts. DPD Officer Donald Coleman (not a party to this case) submitted a report to the DHS regarding RAB's flight from home. It should also be noted that RAB returned to his home on the same evening.

In Brent's initial pleadings, he contends that Coleman effectively withdrew the complaint to the DHS, having advised DHS employee Mia Wenk that RAB had run away from his home as a result of his own poor decision-making. Notwithstanding, Brent asserts that Wenk completely disregarded Coleman's representations and initiated an investigation into RAB's home situation. Wenk visited his home on January 20th and 21st, and thereafter made a referral of the Brent family to the Judson Center[2] on February 16th. On the same day, Brent's name was placed on Michigan's

---

[2]The Judson Center is a human services agency in Michigan with six regional offices throughout the State.

Central Registry for "physical neglect."

On February 18th, a petition to remove the children from the Brent home was filed with, and granted by, the Family Division of the Third Judicial Circuit Court for Wayne County ("Family Court"). On the same evening, DPD officers removed all five of the Brent children from their home. The female children were placed in the Davenport emergency shelter, and the male children were placed in the Wolverine emergency shelter.[3] During a preliminary hearing before Referee Nicolas Bobak on the following day, guardians ad litem and counsel were appointed for the Brent parents.[4] Six days later (February 24th), the family court conducted a probable cause hearing, and probable cause was found to authorize the petition of removal.

On March 3rd, a DHS employee, Mia Trice, placed the male children with Noel and Michael Chinavare and the female children with Wendy and Thomas Chinchak (not parties to this litigation). Brent states that Trice tendered the Chinavares a document which purportedly indicated that they were the temporary guardians of the male children. Trice inspected the Brent home on March 10th, and thereafter, deemed it to be a suitable home for the children. A pretrial hearing was conducted on March 12th before Referee Anthony Crutchfield. Additional pretrial hearings were held on March 23rd and 30th before Judge Judy Hartsfield. On March 26th, all of the children were removed from their respective placements and returned to the emergency shelters. The male children were subsequently placed at Methodist Children's Home on April 5th, whereas the female children were

---

[3]One male child, JAB, was first taken to the hospital for an evaluation, but was subsequently placed with his brothers at Wolverine.

[4]The order memorializing this hearing indicates that guardians ad litem were appointed for the parents because they exhibited what Bobak thought to be "unusual behavior throughout the court hearing."

placed in a foster home on April 28th under the supervision of the Children's Center of Wayne County.

On or around May 5th, Brent's visitation schedule with his daughters was changed from Wednesdays to Thursdays without any input from him or his wife. Brent describes the family's first visitation at the Children's Center as a "case planning conference." A supervisor, following a review of the case, noted that a plea deal had been offered to Brent and his family. It is Brent's contention that this supervisor urged him in the presence of his children that, if he and his wife truly loved their children, they should take the plea deal. The supervisor's suggestion was rejected by Brent and his wife because they collectively believed that its adoption would constitute an admission of false allegations. Brent asserts that this supervisor then announced that all phone contact between the parents and daughters would be suspended immediately.

Pretrial hearings were held on May 3rd and May 10th. Guardians ad litem were appointed for each parent. A jury trial was conducted on May 11th, 12th, and 13th, with the jury eventually finding that one or more statutory grounds existed for the Family Court to exercise jurisdiction over the children. On May 13, 2010, the Family Court ordered that a service plan be completed and given to Brent and his counsel not later than May 27th. However, Brent alleges that neither he nor his wife were permitted to participate in the formulation of this plan. Furthermore, Brent asserts that his appointed counsel was not given a copy of the proposed plan until the day of the hearing on June 2nd. At the hearing, a representative of the Children's Center recommended that the children be returned to their home.

On June 2nd, the children were released to their parents, along with a directive that they remain under the supervision of the DHS. On September 10th, upon finding that (1) the Brents had

improved the conditions within their home and had cooperated in receiving services, and (2) the children's needs had been met, the jurisdiction of the Family Court over this case was officially terminated.

Brent commenced this lawsuit on February 22, 2011. In an order, dated November 15, 2012, the Court, *inter alia,* (1) denied the Children's Center's motion for a summary judgment with respect to Brent's state law claims of an intentional infliction of emotional distress and the imposition of gross negligence, and (2) dismissed Brent's Fourth and Fourteenth Amendment claims against the State Defendants.

II.

The Court will first address the motions for reconsideration that have now been raised by Brent and the Children's Center. In its evaluation of a motion to reconsider, this Court - acting pursuant to E.D. Mich. LR 7.1(h)(3) - must initially determine if the movant has established (1) a "palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled;" and (2) that a correction of the alleged defect would alter the disposition of the case. E.D. Mich. LR 7.1(h)(3). "A 'palpable defect' is a defect which is obvious, clear, unmistakable, manifest, or plain." *Mich. Dep't of Treasury v. Michalec*, 181 F. Supp. 2d 731, 734 (E.D. Mich. 2002) (internal citation omitted).

However, our Local Rules dictate that motions for reconsideration should not be granted if they "merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(h)(3). The Sixth Circuit has held that the "palpable defect" measurement for reconsideration under this Local Rule is consistent with the standard for amending or altering a judgment under Federal Rule of Civil Procedure 59(e). *Henderson v. Walled Lake*

*Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006).

      A.      <u>Brent's Motion for Reconsideration</u>

In his motion for reconsideration, Brent contends that the Court should vacate its order in which a summary judgment was granted in favor of the Wayne County DHS and its employees in their official capacities on the basis of Eleventh Amendment immunity. The gravamen of Brent's motion is that (1) this Court lacked jurisdiction to enter the order, (2) the Wayne County DHS is not an arm of the state for Eleventh Amendment immunity purposes, and (3) the Wayne County DHS waived its sovereign immunity.

The Court turns first to the issue of jurisdiction. According to Brent, a notice of appeal filed by Wenk, Sampson, McGehee, Lamar, Decormier-McFarland, and Trice divested this Court of jurisdiction over the motion for reconsideration that was filed by Wayne County DHS. The Court finds this argument to be without any merit.

The filing of a notice of appeal divests a district court of jurisdiction and control over "those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). "This transfer of power, however, does not effect a total divestiture of jurisdiction from the district court: it retains jurisdiction to . . . adjudicate matters unrelated to the issues on appeal." *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 626 (6th Cir. 2013) (citing *Weaver v. Univ. of Cincinnati*, 970 F.2d 1523, 1528-29 (6th Cir. 1992)).

Here, a notice of appeal was filed by individual employees of the Wayne County DHS. Significantly, the Wayne County DHS did not participate in the appeal. As a result, this Court retained jurisdiction over the Eleventh Amendment immunity issue as it related to the Wayne County DHS. Moreover, their appeal related only to the issues of absolute and qualified immunity

under federal law and governmental immunity under Michigan law. The decision by this Court regarding Eleventh Amendment immunity was never before the Sixth Circuit. Accordingly, this Court retained jurisdiction over the issue of the Eleventh Amendment immunity of the Wayne County DHS.

Brent next submits that the Wayne County DHS is not an arm of the state for the purposes of Eleventh Amendment immunity. This Court disagrees. Federal district courts within the State of Michigan have repeatedly determined that county offices of the Department of Human Services are arms of the state. *See, e.g.*, *Lintz v. Skipski*, 807 F. Supp. 1299, 1303 (W.D. Mich. 1992) (noting that county offices "have repeatedly been found to be instrumentalities of the state"). "In 1975, the Michigan legislature abolished county departments of social services, replacing them with a single state agency known now known [sic] as the Department of Human Services (DHS) (formerly known as the Family Independence Agency)." *Bradford v. Child Protective Servs. of Michigan Genesee Cnty.*, No. 12-CV-13718, 2013 WL 4084756, at *4 (E.D. Mich. Aug. 13, 2013) (citing 1975 Mich. Pub. Act. 237 (Oct. 1, 1975) (codified at Mich. Comp. Laws §§ 400.1 *et seq.*)). At the same time, all staff members within the county social services departments became employees of the state government. Mich. Comp. Laws §§ 400.100, 400.101. Most importantly, any judgment rendered against the Wayne County DHS is an obligation of the state. *See Dodds v. Snyder*, No. 12-14567, 2013 WL 4760969, at *9 (E.D. Mich. Sept. 4, 2013) (citing *inter alia* Mich. Comp. Laws § 18.1396).

Brent contends that *Lintz* is no longer valid support because it cites to a now-repealed statute, Mich. Comp. Laws § 18.1459, for the proposition that a judgment against a county department would be paid from the state treasury. The Court rejects this argument because a current statute,

Mich. Comp. Laws § 18.1396, contains the same mandate that can be found in Mich. Comp. Laws § 18.1459.

Brent also argues that the Defendant waived its Eleventh Amendment immunity protections. It should be noted that the decision to waive immunity "is altogether voluntary on the part of the sovereignty." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-76 (1999) (quoting *Beers v. Arkansas,* 20 How. 527, 529, 15 L.Ed. 991 (1858)). Waiver will not occur unless consent to the lawsuit is "unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Significantly, Brent has not pointed to any such expression of consent.

Finally, Brent challenges the constitutionality of current sovereign immunity doctrine and contends that the doctrine is not available for violations of previous federal court orders. The Court finds these arguments to be without merit. *See, e.g.*, *In re State of New York*, 256 U.S. 490, 497 (1921) ("That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a [lawsuit] brought by private parties against a State without consent given. . . ."); *Pennhurst*, 465 U.S. at 100 (affirming general rule that unconsenting state is immune from lawsuits in federal court regardless of nature of relief sought).

B.     The Children's Center's Motion for Reconsideration

Before turning to the substance of Brent's motion, the Court will first consider the Children's Center's request to file a reply brief in support of its motion for reconsideration. In its quest for relief, the Children's Center contends that a reply brief is necessary because Brent has raised new

arguments in his response to the motion for reconsideration that had not been previously raised by him. The Court does not find a reply brief is necessary to address the contested issue. As a result, the Children's Center's request for leave to file a reply brief is denied.

Turning to the motion for reconsideration, the Children's Center initially contends that the Court improperly declined to hold that it was protected by absolute immunity for social workers under Michigan law with regard to Brent's state law claims of intentional infliction of emotional distress and gross negligence. Specifically, the Children's Center asserts that the Court conflated the protection of absolute immunity for social workers under Michigan law and the more circumscribed immunity in the context of 42 U.S.C. § 1983.

In his amended complaint, Brent alleged that the Children's Center is liable for (1) intentional infliction of emotional distress for urging his wife and him in the presence of their children that if they really loved their children they should accept the plea deal and (b) subsequently denying all telephone contact between the parents and children; and (2) gross negligence in their affirmative duty to help reunify his family." The Court determined that these underlying actions were not undertaken in the capacity of an agent or advisor to the Family Court. As a result, the Court held that the Children's Center was not immune from these claims. The relevant portion of the now-challenged November 15, 2012 order is as follows:

> Under Michigan law, "[s]ocial workers are granted absolute immunity from civil litigation arising out of their work as 'advisors and agents' of the probate court (now to the family division of circuit court) because that court provides parents and other interested parties with a sufficient remedy for any wrongful action by a social worker." *Beauford v. Lewis*, 711 N.W.2d 783, 786 (Mich. Ct. App. 2005). This protection is not limited only to governmental defendants, *see Martin v. Children's Aid Soc'y*, 544 N.W.2d 651, 655 n.5, and has been extended to individual social workers as well as to the entities that employ them, *id.* (granting absolute social worker immunity to Children's Aid Society and its employees); *see also Herman-Muhammad v. White & White Pharmacy, Inc.*, No. 270987, 2007 WL 678645, at *9-

> 10 (Mich. Ct. App. Mar. 6, 2007) (social services agency and its employees entitled to social worker immunity). Thus, as with absolute social worker immunity in the § 1983 context, any conduct related to the filing of petitions or reports, or the giving of testimony or recommendations, in the Family Court cannot form the basis of a state tort claim. Conduct outside of those boundaries, however, is not protected by this immunity.

Order 58, Nov. 15, 2012 (ECF No. 163).

The Children's Center notes that this order equates Michigan immunity for social workers with the protections that are available in the context of federal lawsuits brought under 42 U.S.C. § 1983. Furthermore, the order from this Court sets the boundary of protected conduct as that "related to the filing of petitions or reports, or the giving of testimony or recommendations, in the Family Court." The Children's Center contends that this is a clear error because the Michigan courts do not impose such a rigid limit on protected conduct.

In *Martin v. Children's Aid Soc.*, 544 N.W.2d 651, 655-56 (Mich. Ct. App. 1996), the Michigan Court of Appeals held that the trial court incorrectly denied summary judgment for the social worker defendants on the basis of absolute immunity. The plaintiffs in *Martin* asserted that the actions of the defendants included "curtailing plaintiffs' visitation [rights], threatening to terminate plaintiffs' parental rights, insisting that plaintiffs confess to abusing [their daughter], and supervising the relationship between the foster care and the visitations with the natural parents in a manner so as to contravene any possibility of reunification of the family." *Id.* at 662 (White, J. dissenting). The *Martin* court granted absolute immunity to the social workers even though the above-mentioned allegations went well beyond filing of reports and giving testimony to the Family Court. The court explained that immunity under those circumstances was appropriate because the probate court regularly reviewed recommendations made by the social workers at statutorily required hearings.

> This provided judicial oversight that was sufficient to protect the plaintiffs from allegedly wrongful conduct against their interests by the CAS defendants. Plaintiffs had the statutory right to request accelerated hearings to contest their case service plan. M.C.L. § 712A.19(3); M.S.A. § 27.3178(598.19)(3). The probate court had broad power to address concerns with the case service plan if, after a hearing, they were found to be legitimate. MCR 5.973(B). To allow plaintiffs additional protection in the form of a cause of action against the CAS defendants for money damages would be too costly; it would "disserve the broader public interest in having participants [in contested child protection cases] ... perform their respective functions without fear of having to defend their actions in a civil lawsuit." *Babcock, supra* at 502.

*Id.* at 656. In short, "[i]mmunity extends to social workers in regard to activities involving the initiating and monitoring of child placement proceedings and to placement recommendations in cases where there is close oversight of the recommendations by the court." *Richmond v. Catholic Soc. Servs.*, No. 246833, 2004 WL 1416266, at *1 (Mich. Ct. App. June 24, 2004) (citing *Martin*, 544 N.W.2d at 654-56). The phrase "close oversight" of a social workers' placement recommendations refers "to a situation in which the probate court had reviewed the defendant social workers' findings and recommendations, and took action as a result, at proceedings in which the [] parents were able to contest the recommendations." *Beauford v. Lewis*, 711 N.W.2d 783, 786 (Mich. Ct. App. 2005).

In *Braverman v. Hall*, No. 253619, 2005 WL 1123889, at *1 (Mich. Ct. App. May 12, 2005) (unpublished) (per curiam), the Michigan Court of Appeals rendered a decision in which it affirmed that immunity for social workers under Michigan law is not limited to those acts undertaken in a "quasi-prosecutorial" or "quasi-judicial" role, such as providing testimony or carrying out orders. S*ee also Spikes v. Banks*, 586 N.W.2d 106, 109 (Mich. Ct. App. 1998) (holding that *Martin* is binding precedent requiring summary judgment for defendant based on absolute immunity from tort liability from its placement and supervision of plaintiff). The *Braverman* court examined relevant

11

cases following *Martin*, and noted that the Michigan Court of Appeals has "expanded the basic holding in *Martin* beyond its original facts and limited application." *Braverman*, No. 253619, 2005 WL 1123889, at *1. The Michigan Court of Appeals has also noted that the immunity available under Michigan law exceeds that available for § 1983 claims. *Herman-Muhammad*, 2007 WL 678645, at *9 (*Martin* court "establish[ed] absolute immunity for social workers with respect to state law causes of action arising out of court-supervised child placements" and the same absolute immunity "may not be available for federal claims brought under 42 U.S.C. § 1983"); *Martin*, 544 N.W.2d at 654 n.4. This expansion of social worker immunity under Michigan law has been acknowledged by at least one other judge in this district. *Wygant v. Strand*, No. 09-11684, 2011 WL 533865 (E.D. Mich. Jan. 18, 2011) ("As to claims based on Michigan law, social workers enjoy a blanket absolute immunity that is undisturbed by allegations of bad faith and that is expressly distinguished from the less-than-absolute immunity (which is akin to prosecutorial immunity) provided for claims against social workers under federal law.").

As the Court appears to have erred by equating Michigan social worker immunity with the same immunity in the § 1983 context, it will now reexamine the issue here. An examination of the causes of action alleged by Brent indicates that the protection of absolute immunity is appropriate. In his claim for the intentional infliction of emotional distress, Brent maintains that a representative of the Children's Center told him and his wife - in the presence of their children - that if they loved their children, they would accept the offered plea deal. When the parents refused, they were told that all phone contact with their daughters would be ended immediately. This conversation took place during a family visit at the Children's Center, which Brent characterizes as "a case planning conference." (Am. Compl. XV.A ¶ 8). The facts alleged by Brent resemble those in *Martin*. As noted

above, in *Martin*, the plaintiffs alleged that the social workers had, *inter alia,* (1) deliberately prevented them from having any meaningful contact with their daughter, (2) offered inaccurate and misleading testimony and wrote unfair reports for the purpose of terminating the plaintiffs' parental rights, and (3) insisted that the plaintiffs confess to abusing their daughter as a precondition to her return. 544 N.W.2d at 659, 662 (White, J. dissenting). As the relevant interaction took place during a meeting about the supervision of the children and concerned the recommendation of the social workers, a grant of absolute immunity is required here under *Martin* and its progeny.

Brent also alleges that the Children's Center was "grossly negligent in its affirmative duty to help reunify the family." (Am. Compl. XV.B ¶ 4). Here, the gravamen of Brent's claim is that the Children's Center did not take the appropriate actions to reunify his family. This falls within the realm of situations considered in *Martin* and *Beauford*, where absolute immunity was found to be appropriate because the Family Court is charged with the responsibility of maintaining close oversight of the process. If Brent believed that the Children's Center was not taking the appropriate actions to reunify his family, he had recourse to the Family Court to expedite the process. *Martin*, 544 N.W.2d at 656. Again, the facts in *Martin* are similar to those presented in the instant case. In *Martin*, immunity was granted with respect to the allegation that the social workers "supervis[ed] the relationship between the foster care and visitations with the natural parents in a manner so as to contravene any possibility of reunification of the family." *Id.* at 662 (White, J. dissenting).

In viewing the facts and circumstances herein, the Court concludes that the Childrens' Center is entitled to a grant of absolute immunity. Hence, it need not consider the remainder of the grounds presented in the motion.

III.

The Court will now turn to (1) Brent's motion to reinstate his constitutional claims against the State Defendants and (2) Robert Brent's motion to join as a plaintiff.

A.     Brent's Motion to Reinstate Fourth and Fourteenth Amendment Claims Against the State Defendants

Brent asks the Court to reinstate his Fourth and Fourteenth Amendment claims against the State Defendants, contending that the decision in *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 724 F.3d 687 (6th Cir. 2013) constitutes new law which contravenes the determination by this Court to grant the State Defendants absolute immunity as to those claims. The State Defendants maintain that *Kovacic* is (1) not new law and (2) readily distinguishable from this case.

Under Federal Rule of Civil Procedure 54(b), a court may revise an order which "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" at any time before the entry of a final judgment. Fed. R. Civ. P. 54(b). Typically, courts will reconsider interlocutory orders if there is "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009). Motions to revise may not, however, be used to simply relitigate decided issues. *Glass v. Nw. Airlines, Inc.*, 798 F. Supp. 2d 902, 906-07 (W.D. Tenn. 2011).

In its order dated November 15, 2012, this Court relied on *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 724 (6th Cir. 2011) to determine that a social worker may be absolutely immune with respect to conduct that was "intimately associated with the judicial phase" of the proceedings. (Order 33, Nov. 15, 2012, ECF No. 163). As a result, the Court held that

> [t]he alleged conduct that is protected by absolute immunity includes, at minimum,

14

>  the preparation and submission of the removal petition to the Family Court - even if based on knowingly false information and even if based upon an improper or inadequate investigation, the execution of the resulting removal order, and the giving of recommendations and testimony - even if knowingly false - in the Family Court. (Am. Compl. ¶¶ VI.A.47-55, 57-60, 63, 70, 72, 76-78, 82-83; VII.A.32, 36; VIII.A.13; IX.A.32, 68-69). Thus, Brent cannot bring a § 1983 claim[] against these Defendants on the basis of these allegations.

*Id.* at 35.

In *Kovacic*, the social worker defendants determined that exigent circumstances required the immediate removal of minor children from Kovacic's home. One of the defendants prepared a Temporary Emergency Care Order ("TEC Order") and, accompanied by police officers, removed Kovacic's children from her home and placed them in the county's custody. The following day, a social worker prepared a complaint, including a notarized document containing a recommendation of removal, along with supporting allegations. Several days later, a magistrate judge determined that probable cause existed for the removal and committed the children to the custody of the Cuyahoga County Department of Children and Family Services.

Citing *Pittman*, the Sixth Circuit noted that social workers are absolutely immune when acting in their capacity as legal advocates. *Kovacic*, 724 F.3d at 694. The Sixth Circuit affirmed the district court's ruling that the preparation of the TEC Order, the filing of the complaint, and the in-court testimony were protected by absolute immunity. It also affirmed the denial of absolute immunity for the warrantless removal of the children, reasoning that the physical removal of the minors from the plaintiff's home without a warrant was undertaken by the social workers "in a police capacity rather than as legal advocates." *Id.*

Here, Brent's children were removed from their home pursuant to an order that had been issued by the Family Court after receiving a petition from Wenk. In his amended complaint, Brent

15

does not contest the actual removal of the children. Rather, he challenges (1) the manner in which the court order was obtained, (2) the filing of petitions containing allegedly false information, and (3) allegedly false testimony. Notwithstanding Brent's objections, the Court remains convinced that these actions are governed by *Pittman* - not *Kovacic*.

In his motion, Brent also contends that the warrant is facially invalid. This is a new allegation that is not contained in his amended complaint, and therefore it is not properly introduced in a motion for revision or reconsideration. As to the allegation that the warrant was "rubber-stamped," this issue was disposed of by the Court in its prior order.

For the reasons discussed above, Brent's motion to reinstate his Fourth and Fourteenth Amendment claims against the State Defendants is denied.

### B. Robert Brent's Motion to Join as Plaintiff

In his motion, Robert Brent, the Plaintiff's son, has requested to join in this action as a plaintiff. Federal Rule of Civil Procedure 20 permits the joinder of plaintiffs in a single action if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).

In his motion, Robert Brent asserts that his claims (1) share common questions of law and fact with those raised by the Plaintiff and (2) are against the same defendants as listed in the Plaintiff's amended complaint. He does not, however, clarify what claims he intends to raise – in particular, whether his claims are limited to those already raised by the Plaintiff or whether he proposes to add additional claims and supporting allegations.

To avoid ambiguity, the Court will deny Robert Brent's motion as presently written. The

16

Court will, however, direct the Plaintiff to file a motion for leave to file a second amended complaint along with a proposed second amended complaint that adds Robert Brent as a plaintiff and contains all of Robert Brent's proposed claims and supporting factual allegations. In this way, the parties and the Court will have a clear understanding of the exact claims Robert Brent wishes to raise against these Defendants. The Court will reconsider this issue after reviewing the proposed second amended complaint.

## IV.

For the reasons that have been set forth above, the Court (1) denies Brent's motion for reconsideration (ECF No. 172); (2) denies the Childrens' Center's motion for leave to file a reply brief (ECF No. 180); (3) grants the Children's Center's motion for reconsideration (ECF No. 165), (4) denies Brent's motion to reinstate his Fourth and Fourteenth Amendment claims against the State Defendants (ECF No. 194); and (5) denies Robert Brent's motion to join as plaintiff (ECF No. 182).

The Court will grant the Children's Center's motion for summary judgment with respect to Brent's claims of intentional infliction of emotional distress and gross negligence.

Brent is directed to file a motion for leave to file a second amended complaint within a period of twenty (20) days from the date of this order. The motion must be accompanied by a proposed second amended complaint that adds Robert Brent as a plaintiff and contains all of his proposed claims and supporting factual allegations.

IT IS SO ORDERED.

Date: August 13, 2014                         s/Julian Abele Cook, Jr.
                                              JULIAN ABELE COOK, JR.
                                              U.S. District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 13, 2014.

                                              s/ Kay Doaks
                                              Case Manager